# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| GREAT LAKES DREDGE & DOCK COMPANY, LLC<br>9811 Katy Freeway<br>Houston, Texas 77024<br><br>*Plaintiff,*<br><br>v.<br><br>CHRIS MAGNUS, Commissioner, U.S. Customs and Border Protection;<br>ALEJANDRO MAYORKAS, Acting Secretary, Department of Homeland Security,<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>_____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Great Lakes Dredge & Dock Company, LLC ("Plaintiff" or "Great Lakes Dredge & Dock"), files this Complaint under the Administrative Procedure Act ("APA") and alleges in support thereof as follows:

1. This action challenges a ruling of the U.S. Customs and Border Protection agency ("CBP") permitting foreign companies, operating foreign-flagged vessels built overseas and with non-U.S. citizen crews, to transport merchandise in waters under U.S. jurisdiction that Congress has unambiguously reserved to U.S.-owned companies operating U.S.-built and U.S.-documented vessels with U.S. citizen crews. *See* HQ H317289 (March 25, 2021), *modifying* HQ H309186 (January 27, 2021), *with an appeal decision rendered as* HQ H318758 (June 6, 2022).

2. Although in its initial January 2021 ruling on the matter the agency had no difficulty reaching the result required by the statute's plain language, CBP was prevailed upon to change its

position. It thus reversed its prior ruling in March 2021 and issued a new ruling contrary to the applicable statutory language and to centuries-long U.S. policy dating back to the First Congress, both of which require that the carriage of passengers and merchandise between points under U.S. jurisdiction be by U.S.-built, documented, and crewed vessels owned by U.S. citizens. CBP affirmed the March 2021 ruling on appeal in June 2022.

3. CBP's ruling, unless set aside, will subject a vessel that Great Lakes Dredge & Dock is having built in a U.S. shipyard, as the law requires, to illegal competition from one or more foreign vessels. It will also likely cause Great Lakes Dredge & Dock to abandon plans to construct another vessel at the yard, with the consequent losses to be suffered not only by it, but also by U.S. mariners and U.S. shipyards and their workers.

**PARTIES**

4. Plaintiff Great Lakes Dredge & Dock is a limited liability company organized under the laws of the State of Delaware. Its principal place of business is at 9811 Katy Freeway, Houston Texas.

5. Great Lakes Dredge & Dock is the largest provider of dredging services in the United States and owns and operates the largest and most diverse fleet in the U.S. dredging industry.

6. Great Lakes Dredge & Dock is a U.S. Citizen within the meaning of Section 2 of the Merchant Marine Act of 1920 (popularly known as the Jones Act after its principal sponsor), now codified at 46 U.S.C. § 12103(b).

7. Great Lakes Dredge & Dock has entered into a nearly $200 million contract with Philly Shipyard, Inc., located in Philadelphia, Pennsylvania, under which the shipyard is building the first purpose-built Jones Act-compliant subsea rock installation vessel for use in constructing

U.S. offshore wind facilities. The vessel is expected to be sea ready by the fourth quarter of 2024. The vessel will transport and strategically deposit loads of rock on the seabed on the Outer Continental Shelf ("OCS"), laying scour protection (i.e., erosion protection) for offshore wind farm foundations, cables, and other structures. The project will create hundreds of U.S. jobs and constitutes a major step in establishing a U.S.-based rock supply chain for the offshore wind industry. Great Lakes Dredge & Dock has not only contracted to build this vessel but also has plans to contract to build another vessel in the United States given the expected expansion in offshore wind farms on the OCS, if it can be assured the vessel will not face unlawful competition from foreign vessels. If the CBP ruling stands, Great Lakes Dredge & Dock is unlikely to build that vessel in the United States.

8. Defendant Chris Magnus is the Commissioner and "head" of CBP, 6 U.S.C. § 211(b)(1), the official charged with managing the agency and supervising subordinate officers. He is sued in his official capacity. CBP is a component of the Department of Homeland Security ("DHS"), 6 U.S.C. § 211(a), and an "agency" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 551(1). Defendant Magnus' office address is 1300 Pennsylvania Avenue NW, Washington, DC.

9. Defendant Alejandro Mayorkas is Acting Secretary of DHS. He is responsible for the overall administration, implementation, and enforcement of the customs laws. He is sued in his official capacity. DHS is an "agency" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 551(1). Defendant Mayorkas' office address is 3801 Nebraska Avenue NW, Washington, D.C.

**JURISDICTION**

10. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and the laws of the United States, in particular the APA, 5 U.S.C. § 701 *et seq.*

The United States has waived sovereign immunity for claims seeking declaratory or injunctive relief pursuant to 5 U.S.C. § 702. Jurisdiction is also proper under 28 U.S.C. § 1361 (Mandamus) and 28 U.S.C. § 2201 *et seq*. (Declaratory Judgment Act).

## VENUE

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendants are officers or employees of the United States, or agencies thereof, acting in their official capacities; Plaintiff resides in this District; and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATUTORY AND REGULATORY BACKGROUND

12. "Federal laws protecting U.S. shipping date back to the First Congress in 1789. American shipping in the U.S. coastwise trade has been protected from foreign competition, in order to encourage the development of a U.S. merchant marine, for both national defense and commercial purposes. As a result, all vessels engaged in U.S. coastwise trade have been required to be U.S.-built and U.S.-owned." U.S. CUSTOMS & BORDER PROT., THE JONES ACT 7 (revised Sept. 2020), https://www.cbp.gov/document/guidance/jones-act [hereinafter *CBP Jones Act Guidance*].

13. In the language of the Jones Act statute, "a vessel may not provide any part of the transportation of merchandise by water, or by land and water, between points in the United States to which the coastwise laws apply, either directly or via a foreign port, unless the vessel— (1) is wholly owned by citizens of the United States for purposes of engaging in the coastwise trade; and (2) has been issued a certificate of documentation with a coastwise endorsement under chapter 121 of Title 46 or is exempt from documentation but would otherwise be eligible for such a certificate and endorsement." 46 U.S.C § 55102 (formerly codified at 46 U.S.C. app. § 883).

4

14. "A coastwise transportation of merchandise takes place, within the meaning of the coastwise laws, when merchandise laden at a point embraced within the coastwise laws is unladen at another coastwise point, regardless of the origin or ultimate destination of the merchandise." 19 C.F.R. § 4.80(b).  Trade between points to which the coastwise laws apply is often termed the "coastwise trade."

15. A U.S.-documented vessel must be "wholly owned by a U.S. citizen, the U.S. government, a state government, and/or an eligible entity, partnership, or corporation" to engage in coastwise trade.  46 U.S.C. § 12103.  A vessel that meets this ownership test is at least five net tons, is not documented under the laws of a foreign country, was built in the United States (or qualifies under several very narrow exceptions for non-U.S.-built vessels not applicable here), and "otherwise qualifies to engage in the coastwise trade" may be issued a coastwise endorsement and engage in the coastwise trade.  46 U.S.C. § 12112.  Conversely, "foreign-flag vessels are prohibited from engaging in any part of the coastwise trade—transporting merchandise between U.S. coastwise points," CBP Jones Act Guidance, *supra*, at 11 (subject again to certain narrow exceptions not applicable here).  "In addition, the same prohibitions apply to U.S.-flag vessels that do not have a coastwise endorsement on their documentation." *Id*.

16. "The Jones Act also applies to points on the [OCS] under the Outer Continental Shelf Lands Act (OCSLA), which extends the laws of the United States to:  The subsoil and seabed of the OCS . . . ." *Id.*, at 15 (citing 43 U.S.C. § 1333).  The relevant statutory provision reads as follows:

> *43 U.S. Code § 1333 - Laws and regulations governing lands*
>
> (a)  CONSTITUTION AND UNITED STATES LAWS; LAWS OF ADJACENT STATES; PUBLICATION OF PROJECTED STATE LINES; INTERNATIONAL BOUNDARY DISPUTES; RESTRICTION ON STATE TAXATION AND JURISDICTION

5

(1) JURISDICTION OF THE UNITED STATES ON THE OUTER CONTINENTAL SHELF.—

(A) In general.—The Constitution and laws and civil and political jurisdiction of the United States are extended, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State, to—

   (i)   *the subsoil and seabed of the outer Continental Shelf*;

   (ii)  all artificial islands on the outer Continental Shelf;

   (iii) installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources, including non-mineral energy resources; *or*

   (iv)  any such installation or other device (other than a ship or vessel) for the purpose of transporting or transmitting such resources.

43 U.S.C. § 1333(a)(1)(A)(emphasis added).

17.   The Jones Act is one of the "laws . . . of the United States" extended to the "subsoil and seabed of the outer Continental Shelf," and separately to the three other specified points, by Section 1333(a)(1)(A) of the Outer Continental Shelf Lands Act ("OCSLA").

## THE CHALLENGED RULINGS

18.   Great Lakes Dredge & Dock requested a letter ruling from CBP in February 2020 as to, among other things, whether the transportation of "scour protection material" from a point in the United States to a point on the seabed of the OCS was subject to the Jones Act.

19.   "Jones Act ruling letters are binding guidance from CBP as to whether the transportation of material by a non-coastwise-qualified vessel would result in a violation of 46 U.S.C. § 55102." CBP Jones Act Guidance, *supra*, at 21.

20.   On January 27, 2021, CBP ruled that transportation of scour rock from a point in the United States to the subsoil and seabed of the OCS was a coastwise movement subject to the Jones Act, and thus must be undertaken by coastwise qualified vessels. *See* HQ H309186*,* attached hereto as Exhibit A ("January 27 ruling"). CBP's January 27 ruling stated unequivocally that

"[t]he plain language of OCSLA Section 4 [43 U.S.C. § 1333], as amended by the 2021 [National Defense Authorization Act ("NDAA")], extends U.S. law, to the physical subsoil and seabed of the OCS *as well as* 'installations or devices permanently or temporarily attached to the seabed [for an OCSLA-related purpose]. . . .'" *See* HQ H309186, at 3-4 (emphasis added).

21. The January 27 ruling correctly recognized that under a plain reading of the OCS jurisdictional provision the subsoil and seabed of the OCS provide one basis for OCS jurisdiction, and installations or devices attached to the seabed provide a separate basis.

22. Following a substantial lobbying campaign, and without any notice to Great Lakes Dredge & Dock that CBP was reconsidering the matter, CBP reversed its position in a ruling issued on March 25, 2021. *See* HQ H317289, attached hereto as Exhibit B ("March 2021 ruling"). CBP ruled that the OCS seabed does not become a coastwise point for purposes of the Jones Act until after the "the first layer of scour protection material is placed on the seabed." *Id*.

23. CBP's March 25 ruling was the first time it had applied this "first layer" rule. The ruling ignores clause (i) of subparagraph (A) of the statute, which expressly extends federal law, including the Jones Act, to the "subsoil and seabed of the outer Continental Shelf," 43 U.S.C. § 1333(a)(1)(A)(i), as well as to, separately, "installations and other devices permanently or temporarily attached to the seabed." 43 U.S.C. § 1333(a)(1)(A)(iii). The ruling cites no statutory basis for the conclusion that a point on the OCS seabed is not a coastwise point for Jones Act purposes unless it has some installation or other attachment.

24. CBP's March 2021 ruling did not question that the Jones Act applies on the OCS; that scour protection rock, once laid on the seabed, qualifies as an installation or device; or that scour rock is "merchandise" under the Jones Act.

25. CBP has never explained the basis for concluding that Congress did not extend OCSLA jurisdiction to points on the subsoil and seabed of the OCS that do not have a "first layer" or other installation or other device permanently or temporarily attached to the seabed. CBP has stated that jurisdiction over the OCS is more limited than in the territorial sea, the three-miles area around the U.S. where the Jones Act applies in all circumstances. *See, e.g.*, HQ H317289, at 4. However, CBP has never tied that statement to the conclusion in its March 2021 ruling that the Jones Act did not apply to the transportation of scour rock to the "pristine seabed" of the OCS—i.e., seabed without any attached installation or device. Nor has CBP ever provided any suggestion as to why Congress intended to limit the application of the Jones Act on the OCS as CBP has limited it.

26. To the contrary, the applicable legislative history confirms the plain language of the statute—that U.S. laws, including the Jones Act, apply *both* to the seabed and subsoil *and* to structures attached to them. Legislative history of OCSLA dating back to its enactment in 1953 makes clear that U.S. law was extended to "the whole of the seabed and the subsoil, *as well as* to operational structures." S. Rep. No. 411, at 7 (1953) (emphasis added). The Senate report accompanying OCSLA's enactment states that "Section 4(a) of the bill as introduced extended the maritime and admiralty laws of the United States to structures used in connection with mineral development on the outer shelf. It is stricken because the committee determined to extend jurisdiction *over the whole of the seabed and the subsoil, as well as to operational structures*." *Id*. (emphasis added). The same report notes that the provision goes "a necessary step forward" from control over natural resources on the OCS to "extend the jurisdiction and control of the United States to the seabed and subsoil themselves." *Id*.

27. Great Lakes Dredge & Dock, through counsel, appealed the March 2021 ruling as contrary to the plain meaning of Section 1333(a)(1)(A) of the OCSLA and as arbitrary and capricious.

28. Nearly 15 months after the appeal was submitted, CBP issued a brief decision rejecting it. *See* HQ H318758 (June 6, 2022), attached hereto as Exhibit C.

29. CBP's decision rejecting the appeal did not address Great Lakes Dredge & Dock's contention that clauses (i) and (iii) of subparagraph 1333(a)(1)(A) provide independent bases of jurisdiction establishing the applicability of U.S. laws, including the Jones Act, to the OCS: clause (i) to the subsoil and seabed of the OCS and clause (iii) to installations and other devices attached to the subsoil and seabed. Instead the decision merely discussed prior CBP rulings concerning attachments.

30. CBP's decision on appeal also relied on its assertion that the 2021 NDAA amendments to Section 1333 "merely amended the OCSLA to 'affirm' that the OCSLA extends U.S. jurisdiction to certain activities involving non-mineral resources (*e.g.*, offshore wind)," and "reformatted section [1333] (a)(1)(A) to create sub-sections [sic] (i) through (iv)," which "did not change the meaning of the language in the statute." HQ H318758 at 2. These assertions miss the point, as CBP's position is inconsistent with the plain meaning of Section 1333(a)(1)(A) both before and after the amendments. Both before and after, each of the four clauses provided a separate basis for U.S. jurisdiction under OCSLA, with the matter being moved even further beyond doubt after the reformatting broke them out into separately numbered alternative clauses.

31. Following CBP's reversal of position in its March 2021 ruling, several members of Congress who had sponsored the 2021 amendments to Section 1333 advised CBP that its

conclusion was wrong, and that its ruling was contrary to the plain language and intent of the statute.

32. CBP's rulings will subject Great Lakes Dredge & Dock's scour rock transportation vessel to unlawful competition from foreign vessels to divert business from Great Lakes Dredge & Dock's vessel to these foreign vessels. It also threatens Great Lakes Dredge & Dock's plans to build a second similar vessel in the United States.

## COUNT I

### (Violation of the APA; Agency Action Contrary to Law)

33. Great Lakes Dredge & Dock repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

34. The APA requires that courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (D).

35. CBP's March 2021 ruling, as affirmed in June 2022, that the Jones Act does not prohibit the transportation of scour rock to the seabed of the OCS by a foreign vessel unless there is already a "first layer" of rock attached to the seabed is not in accordance with law because it is contrary to the express and unambiguous language of the OCSLA making the Jones Act applicable to the OCS, and specifically to the subsoil and seabed of the OCS. To the extent there is any ambiguity in the statutory language, CBP's ruling is contrary to law because it is based upon an unreasonable construction of the OCSLA to conclude that the Jones Act does not prohibit the transportation of scour rock to the seabed of the OCS unless there is already a "first layer" of rock attached to the seabed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

1. Declare that the Jones Act prohibits the transportation of scour rock to the seabed of the OCS by a non-coastwise qualified vessel whether or not there is already a "first layer" of rock attached to the seabed.

2. Vacate CBP's March 2021 ruling, and its affirmance by the June 2022 ruling on appeal, and remand the matter to CBP with instructions to issue a new letter ruling consistent with the Court's interpretation of the statute.

3. Order that CBP grant Great Lakes Dredge & Dock its reasonable attorneys' fees, costs, and other disbursements; and

4. Grant any other and further relief that this Court may deem just and proper.

July 26, 2022

Respectfully submitted,

*/s/ Beth W. Petronio*

Beth W. Petronio
Texas Bar No. 00797664
Fed. Id. No. 29628
**K&L Gates LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
(214) 939-5815 (phone)
(214) 939-5849 (fax)
beth.petronio@klgates.com


John Longstreth
(DC Bar # 367047)
(pro hac vice motion forthcoming)
Mark Ruge
(DC Bar # 461738)
(pro hac vice motion forthcoming)
**K&L Gates LLP**
1601 K Street NW
Washington D.C., 20006-1600
(202) 778-9000 (phone)
(202) 778-9100 (fax)
john.longstreth@klgates.com
mark.ruge@klgates.com

**ATTORNEYS FOR PLAINTIFF GREAT LAKES DREDGE & DOCK COMPANY, LLC**
